# IN THE STATE OF DELAWARE

STATE OF DELAWARE )
)
    v. ) Crim. ID No. 2011010289
)
ANA VAZQUEZ, )
)
    Defendant. )

## MEMORANDUM OPINION

Submitted: September 1, 2021
Decided: September 7, 2021

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**GRANTED.**

Amanda Buckworth, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for State*.

Meghan Crist, Esquire, Assistant Public Defender, Office of Defense Services, Wilmington, DE. *Attorney for Defendant*.

**MEDINILLA, J.**

## I.     INTRODUCTION

At 17,[1] Defendant Ana Vazquez stands accused of two counts of Robbery in the First Degree, Possession of a Firearm During the Commission of a Felony (PFDCF), Possession of a Firearm by a Juvenile Prohibited, Possession of a Weapon with a Removed, Obliterated or Altered Serial Number, Receiving Stolen Firearm, Receiving Stolen Property Exceeding $1,500, Conspiracy Second Degree, and Resisting Arrest.[2]  She seeks to transfer her charges to Family Court under 10 *Del. C.* § 1011.  A reverse amenability hearing was held on September 1, 2021.  Upon consideration of the parties' submissions, oral argument, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **GRANTED**.

## II.     FACTUAL AND PROCEDURAL HISTORY[3]

On November 19, 2020 at approximately 5:50 PM, a robbery occurred in the area of Lighthouse Road and Haines Avenue in Edgemoor, Delaware.  It is alleged that Defendant was driving the vehicle involved in the robbery, specifically operating a black Toyota Prius with passengers and co-defendants Ericka Miller (Miller), Kiristen Mays-Robinson (Mays-Robinson), and Gabrielle Petrey (Petrey.)

---

[1] Defendant's date of birth is May16, 2004.
[2] Indictment, True Bill No. 41, *State of Delaware v. Ana Vazquez*, Crim. ID. No. 2011010289, D.I. 3 (Del. Super. Ct. Apr. 26, 2021).
[3] This recitation is based upon oral argument and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on September 1, 2021.

The Victim was over the age of 62. He reported that while he was parked in his car, a black Toyota Prius turned on its high beams while faced in his direction. He exited his vehicle and a passenger exited the right rear of the Prius, pointed a gun at him, and demanded the keys to his car. Orders from inside the Prius to "get his money, too" compelled the Victim to drop his keys, wallet, phone, and a laptop bag with the laptop. The Victim dropped to the ground where he hid behind a nearby car. The Prius then stopped, reversed, and the suspects in the Prius took these items before leaving the scene.

Victim reported the incident to Delaware State Police who later observed the Prius parked at a Sunoco station on Philadelphia Pike. When police made contact, the occupants fled. The police searched in and around the vehicle and found the Victim's debit card outside the vehicle and spent casings and the Victim's backpack inside. A loaded black and silver gun with an extended magazine and obliterated serial numbers, later identified as a Silver Smith & Wesson .40 caliber handgun, were located in plain view on front driver's seat. It was later determined that both the handgun and Prius had been reported stolen days prior.

Two of the suspects, Miller and Mays-Robinson, were eventually located near the Sunoco and arrested. Miller and Mays-Robinson provided post-*Miranda* statements. Mays-Robinson admitted she robbed Victim and was in possession of the Victim's cell phone when she was arrested. Though she claimed she had

possessed the firearm found in the vehicle in the past, she did not admit that she possessed the firearm at the time of the incident. Miller, who admitted she was also in the vehicle, stated that Mays-Robinson did use a gun during the robbery and that they used masks to conceal their identities.

In their interviews, both Mays-Robinson and Miller also made statements that incriminated Defendant. Although both co-defendants made inconsistent statements and at times lied to police, Mays-Robinson stated that Defendant was the driver who earlier that day had also fired the weapon. Mays-Robinson also stated that Defendant told her the Prius was from a prior burglary she committed two days prior. This is corroborated by Miller, who admitted to burglarizing a Claymont residence with Defendant. Miller stated they stole a victim's wallet and car keys while the home was occupied by the resident/victim. Miller further told police that she and Defendant then stole the Prius and that the weapon was stolen from the same apartment complex.

Video surveillance from Sunoco showed a subject entering the store that matched Defendant. Mays-Robinson identified Defendant as one of those suspects who fled and described her as having pink hair also seen on the surveillance video. When Defendant was arrested, she was in possession of a .40 caliber bullet and the keys to the Prius. Defendant was wearing the same clothing observed in the surveillance video at the Sunoco. And she still had pink hair. In her post-*Miranda*

4

interview, Defendant admitted to being in the car right before entering the Sunoco, running away from the police, and to possessing the stolen handgun, but denied being involved in the robbery. Defendant filed a Motion for Amenability Hearing on June 3, 2021. The Court held the hearing on September 1, 2021.

## III. STANDARD OF REVIEW

The reverse amenability process is meant to identify juveniles charged as adults who are amenable to the rehabilitative process of the Family Court.[4] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors[5] set forth in 10 *Del. C.* § 1011(b).[6]

## IV. DISCUSSION

### A. Fair Likelihood of Conviction

Before weighing the § 1011(b) factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile."[7] The Court considers "whether there is a fair likelihood that [the defendant] will be

---

[4] *See generally* 10 *Del. C.* §§ 1010-11; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

[5] The Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"and (4) any "other factors which, in the judgment of the Court are deemed relevant." 10 *Del. C.* § 1011(b).

[6] *See*, *e.g.*, *State v. Harper*, 2014 WL 1303012, at *5-7 (Del. Super. Mar. 31, 2014).

[7] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).

convicted of the crimes charged."[8] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[9]

Here, the State has made out its *prima facia* case as to some of the charges set forth. When Defendant was arrested, she was in possession of both the keys to the stolen car and .40 caliber ammunition that matched the weapon used in the robbery. A co-defendant names her as the driver during the robbery and the firearm was found in the driver's seat. Finally, Defendant admits that she possessed a stolen handgun at some point although she was a prohibited juvenile.

However, for jurisdictional purposes, since Defendant is charged with Possession of a Firearm During Commission of a Felony (PFDCF), the provisions of 11 *Del. C.* § 1447A(f), as amended, require the State to meet an additional burden if it seeks to compel the jurisdiction of the Court and proceed against Defendant as an adult offender. The State must show by proof positive or presumption great evidence that the accused, used displayed or discharged a firearm during the commission of a felony.[10]

---

[8] *Harper*, 2014 WL 1303012, at *5.
[9] *Id.*
[10] 11 *Del. C.* § 1447A(f) ("Every person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult,

Here, the State is proceeding on the theory that Defendant was the operator of the vehicle and that co-defendant robbed the victim at gunpoint. Therefore, it is alleged that the co-defendant used or displayed the firearm during the commission of the robbery, not Defendant. Therefore, the State cannot establish that the accused "used, display, or discharged" a firearm. Accordingly, the jurisdiction provision of § 1447A(f) allows the Court to exercise its discretion to determine whether the firearm charge may be transferred back to Family Court after further consideration under 10 *Del. C.* § 1011(b).

**B. Weighing § 1011(b)'s Four Factors**

The purpose of "determining a juveniles amenability is to place a judicial check on the prosecutorial charging of juveniles."[11] However, 10 *Del. C.* § 1010 states that when a juvenile is charged with the crime of Robbery in the First Degree where such offense involves the display of what appears to be a deadly weapon, a child shall be proceeded against as an adult.[12] Therefore, "since a juvenile charged with a designated felony in the Superior Court has lost the benefit of Family Court adjudication by statutory pronouncement, there is a presumption that need exists for adult discipline and legal restraint. Hence, the burden is upon the juvenile to

---

notwithstanding any contrary provisions or statutes governing the Family Court or any other state law. The provisions of this section notwithstanding, the Attorney General may elect to proceed in Family Court.").

[11] *Harper*, 2014 WL 1303012, at *4 (citing *State v. Anderson*, 697 A.2d 379, 383 (Del. 1997)).

[12] *See* 10 *Del. C.* § 1010(a)(1).

demonstrate to the contrary."[13]  In considering whether the factors weigh in favor of transfer, Defendant has met her burden.

### 1. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor is two pronged.[14]  All charges against Defendant are serious in nature and weigh against transfer. As to the second prong, Defendant has two recent previous adjudications.  The first in November 2019 on charges for Theft and Conspiracy Third Degree.  The second from August 2020 for Disregarding a Police Signal is her first felony offense.  Although she has three pending juvenile cases, they are also recent; June and November of 2020.  Therefore, this prong weighs in favor of transfer.

### 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Defendant's service history is recent, entering YRS in December 2019.  Defendant has been placed on GPS monitoring twice and when Defendant was arrested, she was being supervised by probation.  With COVID-19, the Court considers also that shutdowns may have affected treatment efforts in 2020.

---

[13] *Harper*, 2014 WL 1303012, at *4 (quoting *Anderson*, 385 A.2d at 740) (internal quotations omitted); *see also State v. Mayhall*, 659 A.2d 790, 795 (Del. Super. 1995) ("I also take into consideration the fact that by including second degree murder in those offenses where original jurisdiction has been conferred on the Superior Court under 10 *Del. C.* § 1010 the legislature has created a rebuttable presumption that juveniles charged with that crime should be tried as adults and the burden of proof rests with each defendant to rebut that presumption.").
[14] *See* 10 *Del. C.* § 1011(b)(1).

Today, Defendant has been detained at New Castle County Detention Center (NCCDC) since November of 2020. While detained, Defendant has done well as evidenced by obtaining gold shirt status on multiple occasions. While there have been instances where Defendant has shown disruptive behavior and lost her gold shirt, YRS indicates that Defendant has worked hard to earn it back and maintain her status.[15]

Jared B. Moore, Psy.D., and YRS representatives, Regina Williams and Nakeba Y. Jackson, submitted their respective reports supporting their positions that Defendant is amenable to the services of Family Court. No evidence was presented to the contrary.

Dr. Moore opined that Defendant had adhered to all recent treatment efforts including psychotherapy and medication,[16] and that she had responded well to treatment, attaining, losing and regaining "Gold Star" status.[17] He recommends Defendant be placed at Grace Cottage, a Level IV Family Court facility,[18] "as the most appropriate" placement for needed services.[19] This was especially where

---

[15] DYRS Reverse Amenability Report by Regina Williams and Nakeba Y. Jackson, at 5 (Aug. 25, 2021).
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] The services provided include: cognitive-behavioral therapy, individual and family counseling, daily academic education by certified instructors, special education services and GED preparation, mental health services provided by a certified psychologist and psychiatrist, and gender-responsive life skills curriculum. *Id.*

Defendant had already demonstrated favorable responses to some of these services while at NCCDC.[20] Moreover, Dr. Moore stated that without intervention, Defendant constituted a low to moderate risk for future violence.[21] And that with intervention, Defendant's risk level could be lowered.[22]

Since Defendant has not yet had the benefit of Level IV or V services through the Department of Services for Children, Youth & their Families, YRS agreed that Defendant should remain in Family Court, concurring with Dr. Moore that it can provide support and services.[23] The evidence presented weighs in favor of transfer.

### 3. Section 1011(b) Factor Three: Interest of Society and Defendant

Dr. Moore testified that Defendant had a "favorable prognosis for change" and that with appropriate treatment, society's best interest would be served as well.[24] He also opined that Defendant's "best interests would be served by adjudication within the purview of the juvenile justice system and the Family Court, rather than in Superior Court."[25] No evidence was presented to suggest otherwise. This factor weighs in favor of transfer.[26]

---

[20] *Id.*

[21] Psychological Evaluation by Jared B. Moore, Psy.D., at 9 (June 4, 2021).

[22] *Id.*

[23] DYRS Reverse Amenability Report by Regina Williams and Nakeba Y. Jackson, at 5 (Aug. 25, 2021).

[24] *Id.* at 13.

[25] *Id.*

[26] The fourth factor of § 1011(b) – other factors the Court deems relevant – has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in this ruling.

## V.    CONCLUSION

Under § 1011(b), the Court finds that Defendant has met her burden.  The factors weigh in favor of transfer.  At 17 years of age, there is time for some Level IV or V placement, with community supervision that may be available as she transitions into adulthood.  For the reasons stated above, Defendant's Motion to Transfer Charges to Family Court is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc:    Prothonotary